# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2286

Daniel G. Ross, Appellant,

v.

James B. Peake, M.D.,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided   January 2, 2008  )

*Robert V. Chisholm,* of Washington, D.C., was on the brief for the appellant.

*Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington,* Deputy Assistant General Counsel; and *Catherine A. Chase*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and MOORMAN, *Judges.*

GREENE, *Chief Judge*: Veteran Daniel G. Ross appeals, through counsel, a June 20, 2005, decision of the Board of Veterans' Appeals (Board) that denied an effective date before December 7, 1999, for the assignment of a rating of total disability based on individual unemployability (TDIU) and for the award of secondary VA service connection for depression with anxiety. Record (R.) at 1-17. Mr. Ross argues: (1) that the Board, when deciding the effective date, erred by not assigning him an earlier effective date based on the provisions of 38 C.F.R. § 3.310(a) (2007); and (2) that the effective date for his award of secondary service connection should be the same as the effective date of the underlying condition. He also argues that a claim for secondary service connection is a claim for increased compensation, and that the Board, therefore, erred by failing to apply the effective date rules for increased compensation claims, provided in 38 U.S.C. § 5110(b) and 38 C.F.R. § 3.400(o)(2) (2007). The Secretary argues for affirmance and urges the Court to reject Mr. Ross's argument that § 3.310(a) applies to the assignment of an effective date for secondary service connection. For the reasons that follow, the June 2005 Board decision will be affirmed.

# I. BACKGROUND

Mr. Ross served in the U.S. Army from August 1969 to August 1971. R. at 21. In May 1999, a VA regional office (RO) reopened his previously denied claim for paroxysmal atrial tachycardia (a heart condition), awarded service connection, and assigned a disability rating of 10%, effective February 1989. R. at 110-11. Mr. Ross, through his current counsel, appealed the disability rating assigned (R. at 117), and on December 7, 1999, submitted a statement from Carl Barchi, a certified vocational specialist, who opined that Mr. Ross's heart and anxiety condition had prevented him from working since 1985 (R. at 120-22, 131). The RO considered Mr. Barchi's statement as a claim for secondary service connection for depression and for a TDIU rating. *See* R. at 189. In March 2000, the RO determined that the May 1999 RO's assignment of a February 1989 effective date for Mr. Ross's heart condition was clearly and unmistakably erroneous and, instead, assigned an effective date of August 15, 1994, which it determined to be the date of his reopened claim.[1] R. at 164-66. In May 2000, the RO denied service connection for depression, claimed as secondary to Mr. Ross's service-connected heart condition. R. at 186-89. The RO also denied a TDIU rating. R. at 188.

Mr. Ross appealed, and following the submission of additional evidence (R. at 209-12, 230-34), the RO, in January 2001, awarded service connection for depression with anxiety, secondary to his service-connected heart condition, and assigned a 70% disability rating. R. at 242-48. The RO also awarded a rating of TDIU. *Id.* The RO assigned an effective date of December 7, 1999, to both ratings, which it determined to be the date that Mr. Ross claimed secondary service connection and met the schedular requirements for a TDIU rating. R. at 242. Mr. Ross disagreed with the effective dates assigned and appealed to the Board, asserting that he was entitled to an effective date of either February 2, 1989, which was the initial effective date of service connection for his heart condition, or August 15, 1994, the date the RO determined to be the proper effective date for his 10%, heart condition, disability rating. R. at 257-58. After an extensive procedural history, including two remands from the Court for the VA to ensure procedural compliance, the

---

[1] Mr. Ross's service connection claim was initially denied in March 1986. In February 1989, he submitted new and material evidence to reopen his claim, but it was denied by a VA regional office. Prior to the submission of new and material evidence in August 1994, his claim was thrice finally denied. Record (R.) at 164, 167.

Board, in June 2005, denied an effective date before December 7, 1999, for his awards of secondary service connection and a TDIU rating (R. at 1-17). This appeal followed.

## II. LAW AND ANALYSIS

Section 5110(a) of title 38, U.S. Code, governs the assignment of effective dates for awards of benefits and states:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). Similarly, the implementing regulation states that the effective date of an award shall be the date of receipt of the claim or the date entitlement arose, whichever is later, unless the claim is received within one year after separation from service. *See* 38 C.F.R. § 3.400. An exception to this general rule occurs in "an award of increased compensation." 38 U.S.C. § 5110(b)(2); *see* 38 C.F.R. § 3.400(o)(2). An effective date for such an award may date back as much as one year before the date of the formal application for increase, if it is factually "ascertainable that an increase in disability had occurred" within that timeframe. 38 U.S.C. § 5110(b)(2); *see Harper v. Brown*, 10 Vet.App. 125, 126 (1997); 38 C.F.R. § 3.400(o)(2).

The Board's determination of the proper effective date for an award of VA benefits is a finding of fact reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). A finding of material fact is clearly erroneous when the Court, after reviewing the entire evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Mr. Ross contends that the effective date assigned for his secondary condition must be the same as the effective date for his underlying condition because § 3.310, the regulation awarding service connection for secondary conditions, states that a "secondary condition shall be considered a part of the original condition." 38 C.F.R. § 3.310(a). The Court recently rejected this argument in *Ellington v. Nicholson*, __ Vet.App. __, __, No. 04-0403, 2007 WL 2126022, at *4 (July 25, 2007), *appeal docketed*, No. 08-7012 (Fed. Cir. Oct. 16, 2007). In *Ellington*, the Court reiterated its previous holding that "§ 3.310(a) 'govern[s] *only entitlement* to secondary-service-connection

3

claims.'" *Id.* at __, slip op. at 5 (quoting *Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006)). The Court explained that § 3.310(a) requires VA to apply the same rules to the assignment of an effective date for secondarily service-connected conditions as it does for directly service-connected conditions. *Ellington*, __ Vet.App. at __, slip op. at 6. The Court held, therefore, that the "effective date assigned for a secondarily service-connected condition is governed by 38 C.F.R. § 3.400." *Id.* Accordingly, as in *Ellington*, Mr. Ross's argument that § 3.310(a) requires the assignment of an August 15, 1994, effective date for both his secondarily service-connected depression with anxiety and his TDIU rating is rejected.

Mr. Ross next argues that a claim for secondary service connection is a claim for increased compensation, and therefore, the Board erred by failing to consider whether, under section 5110(b)(2) and § 3.400(o)(2), he was entitled to an effective date as early as December 7, 1998, for his secondarily service-connected depression with anxiety and for his TDIU-rating award. In support of this argument, Mr. Ross contends that a grant of secondary service connection results in an award of increased compensation under § 3.310(a) "because the secondary condition shall be considered a part of the original condition," and thus, the assignment of an effective date for the secondary condition is controlled by section 5110(b)(2) and § 3.400(o)(2), which pertain to awards of increased compensation. Appellant's Brief at 14-15.

Secondary service connection is awarded when a claimant suffers an additional disability that "is proximately due to or the result of a service-connected disease or injury." 38 C.F.R. § 3.310(a). Although generally the effective date awarded to a service-connected disability can be no earlier than the date that VA received the claim for that particular disability, in awards of "increased compensation" the effective date may date back as much as one year before the date of the formal application for increase if it is factually "ascertainable that an *increase in disability* had occurred" within that timeframe. 38 U.S.C. § 5100(a), (b)(2) (emphasis added); 38 C.F.R. § 3.400(o)(1), (2). Therefore, the question before the Court is whether a grant of secondary service connection is an award of "increased compensation" within the meaning of section 5110(b)(2) and § 3.400(o)(2). This question hinges on whether there was "an increase in disability" within the meaning of section 5110(b)(2) and § 3.400(o)(2).

4

In *Wood v. Derwinski*, the Court held that an application for unemployability compensation was an application for "increased compensation" within the meaning of the statute because the claimant "was not alleging any new disability," but was attempting to show that his already service-connected condition had worsened. 1 Vet.App. 367, 369 (1991). In *Hazan v. Gober*, the Court considered the meaning of "increase in disability," as stated in section 5110(b)(2), and determined that the "only cognizable 'increase' for this purpose is one to the next disability level." 10 Vet.App. 511, 519 (1997). In *Dalton v. Nicholson*, the Court held that a rating of TDIU based on an inability to secure or follow a substantially gainful occupation as a result of an already service-connected disability amounts to an award of increased compensation within the meaning of section 5110(b)(2). 21 Vet.App. 23, 34 (2007). The Court reasoned that a veteran whose service-connected disability later renders him or her unemployable "has logically undergone an increase in disability." *Id.* at 33. Thus, a claim for increased compensation is one where a veteran asserts that an already service-connected condition has worsened and not where, as here, a veteran asserts that he or she has incurred *additional* disabilities as a result of that service-connected condition. *See Dalton*, 21 Vet.App. at 32-34 (holding that TDIU claim *based on already service-connected condition* is increased compensation claim for purpose of the application of 38 U.S.C. § 5110(b)(2)); *id.* at 34 (recognizing that award of TDIU may not amount to award of increased compensation where TDIU is awarded as part of initial award of disability compensation benefits); *Wood, supra*.

Although § 3.310(a) provides that the "secondary condition shall be considered a part of the original condition," when secondary service connection is thus established, as we held in *Roper*, § 3.310(a) does not control the assignment of an effective date for that award of secondary service connection. *Roper*, 20 Vet.App at 178 (citing *Collaro v. West*, 136 F.3d 1304,1308 (Fed. Cir. 1998)). Indeed, § 3.310(a) requires direct and secondarily service-connected conditions to be afforded the same treatment for *all* purposes. *Roper*, 20 Vet.App. at 181. Thus, an award of "increased compensation" within the meaning of section 5110(b)(2) does not encompass an award of secondary service connection because, by definition, secondary service connection requires the incurrence of an *additional* disability. *See Hazan*, 10 Vet.App. at 519 (requiring increase in disability level to invoke section 5110(b)(2)). Moreover, the additional disability is separately rated under the VA Schedule for Rating Disabilities. Furthermore, being secondarily service connected is not analogous to being rendered unemployable as a result of a service-connected disability

because the latter demonstrates a worsening of the *underlying* condition and not the incurrence of an *additional* disability. *Compare* 38 C.F.R. § 3.310(a) *with Dalton, supra*.

It is only when a claimant alleges a separate disability that arises after, and as a result of, the original disability, that he or she can be awarded secondary service connection. *See* 38 C.F.R. § 3.310(a) (awarding secondary service connection for additional disability proximately due to already service-connected disease or injury). Section 3.310(a) simply recognizes that a veteran may acquire additional disabilities by reason of his or her service-connected disability. Thus, the date when application for that additional disability was made or when that additional disability was acquired or became manifest, if later than the date of the application, necessarily would control the effective date for an award. *See* 38 U.S.C. § 5110(a). Surely, the veteran could not expect to receive a benefit for a disability that had not yet occurred. Therefore, although an award of secondary service connection may result in an increase in the overall total disability compensation, it is a separate factor and such award does not represent an increase in the severity of the original disability.

Applying the above analysis to the instant case, Mr. Ross's argument concerning the applicability of section 5110(b)(2) and § 3.400(o)(2) to his secondarily service-connected depression with anxiety is misplaced. Here, Mr. Ross is secondarily service connected for depression with anxiety under a diagnostic code (DC) separate and distinct from the one under which he is directly service connected for his heart condition. R. at 111 (showing service connection for heart condition under 38 C.F.R. § 4.104, DC 7010-7013 (1998)); R. at 248. Because his award did not result in any increase in disability level under § 4.104, DC 7010-7013, there was no "increase in disability," and thus, the award did not result in "increased compensation" within the meaning of section 5110(b)(2). *See Hazan*, 10 Vet.App. at 519 (requiring increase in disability level to invoke section 5110(b)(2)). Accordingly, the exception to the general rule for effective dates is not applicable to awards of secondary service connection, as they are not awards of increased compensation within the meaning of the statute. We therefore hold that the Board did not err in failing to consider and apply section 5110(b)(2) and § 3.400(o)(2) to determine whether Mr. Ross was entitled to an effective date as early as December 7, 1998, for his secondarily service-connected depression with anxiety. *See* 38 C.F.R. § 7104(a), (d)(1); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (Board required to consider and discuss all "potentially applicable" provisions of law and regulation.)

6

Mr. Ross also argues that the Board erred in failing to consider section 5110(b)(2) and § 3.400(o)(2) in connection with his TDIU-rating award. Regarding the effective date for Mr. Ross's TDIU-rating, § 3.400(o)(2) is applicable when a claimant is "awarded TDIU based on an already service-connected condition, which later renders him unable to secure or follow a substantially gainful occupation." *Dalton*, 21 Vet.App. at 34 (discussing schedular TDIU award). Pursuant to 38 C.F.R. § 4.16(a), a schedular TDIU rating is warranted only when a veteran who is unable to secure or follow a substantially gainful occupation because of service-connected disabilities has either one service-connected disability rated at least 60% disabling or multiple service-connected disabilities yielding a combined rating of 70% (with at least one of those disabilities rated 40% or more). *See* 38 C.F.R. § 4.16(a) (2007). Before the December 1999 effective date of his 70% schedular rating for his secondarily service-connected depression with anxiety, Mr. Ross was in receipt of a singular 10% disability rating for his heart condition (*see* R. at 248), and thus, he did not satisfy the threshold percentage requirements for a TDIU rating under § 4.16(a).[2]

Further, in denying an effective date before December 7, 1999, for his TDIU rating, the Board referred to § 3.400(o)(2), but found that because the "disabling effects of the veteran's depression with anxiety may only be taken into account for the period beginning December 7, 1999, entitlement to TDIU did not arise before that date." R. at 16. In other words, the Board correctly determined that the effective date for Mr. Ross's schedular TDIU-rating award cannot be earlier than the date of his claim for secondary service connection for depression with anxiety. Accordingly, upon review of the record in its entirety, there was a plausible basis for the Board's determination that December 7, 1999, was the earliest factually ascertainable date of entitlement to a TDIU rating under § 4.16(a), and its decision is not clearly erroneous. *See Evans, supra*.

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings,

the June 20, 2005, Board decision is AFFIRMED.

---

[2] Mr. Ross's total disability based on individual unemployability (TDIU) rating award here was specifically based on the fact that he had met the schedular TDIU-rating requirements under 38 C.F.R. § 4.16(a). R. at 242. The Court notes that Mr. Ross makes no argument regarding the application of 38 C.F.R. § 4.16(b) to his case.