# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0098

HOWARD MORGAN, JR., APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 15, 2018            Decided May 16, 2019)

*Zachary M. Stolz* and *Amy F. Odom*, with whom *Alyse E. Galoski* was on the brief, all of Providence, Rhode Island, for the appellant.

*Ronen Z. Morris*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Sarah W. Fusina*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, ALLEN, and TOTH, *Judges*.

ALLEN, *Judge*: The appellant Howard Morgan, Jr., served the Nation honorably in the United States Navy from 1965 to 1968 and again from 1969 to 1971. He appeals that portion of a December 8, 2016, Board of Veterans' Appeals (Board) decision that denied an increased rating for his bilateral hearing loss, currently rated at 10%.[1] Record (R.) at 2-22. He argues the Board erred by not referring his hearing loss claim for extraschedular consideration. *See* 38 C.F.R. § 3.321(b)(1) (2018); *see also Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed Cir. 2009). The Secretary argues that the Board was not required to consider extraschedular referral because the issue was neither expressly raised by the appellant nor reasonably raised by the record. *See Yancy v. McDonald*, 27 Vet.App. 484 (2016). Because we are unable to determine whether the Board found the issue not reasonably raised, or in fact found it reasonably raised but then declined to refer the appellant for extraschedular consideration, we

---

[1] The appellant does not appeal the portions of the Board's decision denying service connection for diabetes, hypertension, and erectile dysfunction. Because he has not raised any arguments about those denials, we consider those issues abandoned. *See Norvell v. Peake*, 22 Vet.App. 194, 201 (2008). The Board also remanded the issue of service connection for a low back condition. Therefore, that issue is not before us. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam).

hold that the Board's statement of reasons or bases frustrates judicial review and set aside the portion of the Board's decision denying the appellant an increased rating for bilateral hearing loss and remand it so that the Board can adequately explain its findings. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

We also remind the Board that VA's duty to maximize benefits requires it to exhaust *all* schedular alternatives for rating a disability *before* the extraschedular analysis is triggered. This is a threshold analysis intended to ensure that VA has satisfied its duty to maximize benefits by examining all possible rating methods in search of the highest level of established schedular compensation before resorting to the extraschedular referral process—something that is meant to be "exceptional." *See* 38 C.F.R. § 3.321(b)(1). Thus, schedular rating concepts—including, but not limited to, secondary service connection, analogous ratings, the requirement to assign a higher schedular rating if a veteran's disability more nearly approximates the higher rating, the requirement that VA resolve doubt in favor of claimants, ratings based on individual unemployability, special monthly compensation, and the ability to rate a single disability under multiple diagnostic codes without pyramiding—are critical components of the duty to maximize benefits well before we reach an extraschedular analysis. *See Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) ("VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations.").

## I. BACKGROUND

### A. Factual Background

This case began in 2011, when the appellant filed service-connection claims for tinnitus, hearing loss, and post-traumatic stress disorder (PTSD). R. at 959-66. A VA regional office (RO) granted service connection for bilateral hearing loss in 2012 at a noncompensable rating. R. at 709-14. The appellant timely disagreed with that decision, R. at 662-66, and the RO continued his noncompensable rating in a 2013 Statement of the Case, R. at 469-503. After the appellant appealed that decision, VA increased his bilateral hearing loss rating to 10%. R. at 416.

At a 2012 PTSD evaluation, the appellant reported a generally poor relationship with his wife, feelings of detachment or estrangement from others, and difficulty maintaining effective work and social relationships. R. at 745-54. A VA audiological examination later that year found his hearing loss and tinnitus were at least as likely as not related to service. R. at 1128-29. In 2014,

the appellant underwent another VA audiological examination. R. at 430-38. At that examination, he complained that he could not hear his preacher at church or his grandchild. *Id.* at 436. He also stated he had to open his car windows to hear traffic. *Id.*

The appellant testified before a Board member in 2016 and stated that his hearing loss had gotten worse since the 2014 rating decision assigning him a 10% rating. R. at 344. He also stated he frequently had to repeat himself or ask others to repeat themselves and, as he reported during his 2012 PTSD evaluation, that his relationship with his wife was strained. *Id*. Then, in December 2016, the Board issued the decision on appeal, denying the appellant an increased schedular rating for bilateral hearing loss. R. at 1-24. Specifically, in a section entitled "Extraschedular Consideration," the Board stated:

> The Board *has considered* whether referral for an extraschedular rating is warranted for the relevant periods on appeal. The Veteran's service-connected bilateral hearing loss disability is manifested by signs and symptoms such as hearing loss, difficulty hearing individuals during conversations, and the use of hearing aids. These signs and symptoms, and their resulting impairment, are aptly contemplated by the rating schedule as part of the evaluation of hearing impairment. *Neither the facts of this case nor the Veteran's allegations raise the issue of extraschedular consideration, and a referral for an extraschedular analysis is not necessary.*

R. at 17 (emphasis added).

Whether the Board chose not to perform the analysis because it did not believe the issue was raised (as the first half of this paragraph suggests) or affirmatively decided that referral was not warranted (as the second part indicates), we know for certain that the Board did not refer the appellant for extraschedular consideration. The appellant then appealed to this Court. As we explain, we set aside that portion of the Board's decision denying an increased rating for hearing loss and remand the matter so that the Board can provide an adequate statement of reasons or bases explaining its findings.

B. The Parties' Arguments

The appellant argues the Board erred by not referring him for extraschedular consideration, because the issue was reasonably raised by record evidence reflecting safety concerns from his having to roll the car window down to hear traffic while driving. Appellant's Brief (Br.) at 12-16. The Secretary argues in response that the Board did not err because it was not obligated to consider extraschedular referral as "[t]he functional effects of Appellant's hearing loss did not reasonably raise the issue[.]" Secretary's Br. at 9. The parties also provided extensive arguments regarding the

continued viability of the extraschedular analysis. But, given the Board's inadequate statement of reasons or bases, we are unable to reach those issues here and must leave them for another day.

## II. ANALYSIS

### A. The Board's Statement of Reasons or Bases Frustrates Judicial Review

Because the Board is obligated only to discuss potential extraschedular referral when the claimant expressly raises the issue or the record reasonably raises it, the threshold question in this appeal is whether the Board was obligated to address extraschedular referral at all. *See Yancy*, 27 Vet.App. at 493. And, since the appellant does not contend that he explicitly raised the issue of extraschedular referral before VA, he can take issue with the Board's analysis here only if the record reasonably raised the issue.

The appellant cites evidence that his relationship with his wife is strained. *See* R. at 750. And he stated he must open his car windows to hear traffic while driving. *See* R. at 436. He argues these "functional effects" of hearing loss are uncontemplated symptoms reasonably raising the issue of extraschedular referral. But the evidence regarding the appellant's relationship with his wife is, at best, evidence of the collective impact his service-connected PTSD has in conjunction with his hearing loss. *See* R. at 750 (Apr. 2012 PTSD examination). However, VA recently promulgated a final rule, effective January 8, 2018, amending § 3.321(b)(1) such that VA is no longer required to consider the collective impact of service-connected disabilities as part of the extraschedular analysis. *See* Department of Veterans Affairs, Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830 (Dec. 8, 2017); *Thurlow v. Wilkie*, 30 Vet.App. 231, 238-40 (2018). Thus, any evidence of collective impact is irrelevant to our analysis here.[2] As to potential traffic safety concerns, the only mention of them is found in a disability benefits questionnaire for tinnitus, not hearing loss. *See* R. at 436. In fact, the only functional effect the appellant reported regarding his hearing loss was that "[p]eople have to talk loud for him to hear." R. at 434.

---

[2] On November 11, 2017, the appellant informed the Court that, in response to the revision of § 3.321(b)(1), he was withdrawing his appeal as to the issue of extraschedular referral for the collective impact of his PTSD and hearing loss disabilities. *See* Appellant's Notice of Withdrawal of Second Issue at 1. We accept the appellant's withdrawal, but express no views on whether the revisions to § 3.321(b)(1) go further than his understanding, other than to note that the regulatory change does not affect the issues we decide today.

Turning to the Board's decision, it provided an entire section entitled "Extraschedular Consideration." R. at 17. The very first sentence of that section reads: "The Board *has considered* whether referral for an extraschedular rating is warranted for the relevant periods on appeal." *Id.* (emphasis added). Yet the Board went on to state that "[n]either the facts of the case nor the Veteran's allegations raise the issue of extraschedular consideration." *Id.* Thus, we are unable to say whether the Board found the issue of extraschedular referral *raised*, even if it ultimately concluded that referral should be *denied*, or whether the Board found the issue not raised at all.

Further, we are unable to say that this error is harmless because if the Board found the issue raised, that would be a favorable factual finding that we could not overturn. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007); *see also* 38 U.S.C. § 7261(a)(4) (limiting the Court's factual review to "finding[s] of fact adverse to the claimant"); *Hines v. Principi*, 18 Vet.App. 227, 239 (2004) (holding that we "cannot controvert findings made by the Board that are not adverse to the appellant"); *Roberson*, 17 Vet.App. at 139 (holding that "the Court is clearly without authority to reverse findings of fact that are beneficial to claimants"); *see also Robinson v. Peake*, 21 Vet.App. 545, 553 (2008) (what is reasonably raised by the record is a factual question), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1335 (Fed. Cir. 2009). Given the Board's contradictory explanation of its findings, we are unable to determine the precise basis for the Board's decision and, thus, remand is warranted. *See Allday*, 7 Vet.App. at 527; *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998).

Having determined that remand is warranted, we consider the Board's obligations on remand under its duty to maximize benefits. And, as we explain, that duty requires VA to fully explore all schedular avenues for compensating a claimant, something that is antecedent to extraschedular consideration.

### B. The Duty To Maximize Benefits

"The Secretary is required to maximize benefits[.]" *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008). Veterans are "generally [] presumed to be seeking the maximum benefit allowed by law and regulation[.]" *AB v. Brown*, 6 Vet.App. 35, 38 (1993); *see also Tatum v. Shinseki*, 23 Vet.App. 152, 157 (2009). This duty is rooted in 38 C.F.R. § 3.103(a), which requires VA to "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government."

VA has powerful, ready-made *schedular* rating tools with which it can better adjudicate claims that include symptoms and effects not contemplated by an applicable diagnostic code.[3] In other words, there is much that can be done—indeed that must be done—to ensure a veteran is appropriately compensated before resorting to § 3.321(b)'s extraschedular provisions. *See Bradley*, 22 Vet.App. at 294; *AB*, 6 Vet.App. at 38; 38 C.F.R. § 3.103(a) (2018). For example, the concept of secondary service connection allows for service connection for any disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a) (2018); s*ee Frost v. Shulkin*, 29 Vet.App. 131, 138-39 (2017); *Allen v. West*, 7 Vet.App. 439, 449 (1995). Secondary service connection is a powerful alternative to extraschedular referral and will generally be more favorable to a veteran. Conditions can be secondarily service connected regardless of how long after service the condition manifests, provided there is sufficient evidence linking the secondary condition to a service connected disability. *See Dyess v. Derwinski*, 1 Vet.App. 448, 454 (1991). And the Court has interpreted § 3.310 "to require VA to afford secondarily service-connected conditions the same treatment (no more or less favorable treatment) as the underlying service-connected conditions for all determinations." *Roper v. Nicholson*, 20 Vet.App. 173, 181 (2006).

In addition to secondary service connection, under the schedular rating process VA may also utilize analogous ratings. 38 C.F.R. § 4.20 provides that "[w]hen an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury which not only the functions affected, but the anatomical localization and symptomatology are closely analogous." The Court has held that "when regulations do not provide diagnostic codes for specific disorders, the VA must evaluate those conditions under codes for similar or analogous disorders." *Lendenmann*, 3 Vet.App. at 349-50. VA considers three factors when deciding whether one condition is related closely enough to another to permit rating by analogy: (1) The functions the condition affects; (2) the condition's location on the body; and (3) the similarity of symptoms. *Id.* at 350-51. Once VA rates a claimant's disability analogously, it must treat the disability as if it *is* the analogous condition. *See Green v. West*, 11 Vet.App. 472, 476 (1998).

Further tools of the schedular rating process abound. For example, one such tool is found in 38 C.F.R. § 4.7, which provides, in part, that "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more

---

[3] The duty to maximize benefits and the tools we describe here apply whenever VA rates a service-connected disability, not just in the extraschedular context.

nearly approximates the criteria required for that rating." Another, 38 C.F.R. § 4.3, requires VA to "resolve [reasonable doubt] in favor of the claimant" when assigning a rating. VA also may rate a single disability under multiple diagnostic codes without pyramiding. *See Lyles v. Shulkin*, 29 Vet.App. 109 (2017); *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994); VA Gen. Coun. Prec. 23-97 (July 1, 1997). VA may also award a particularly disabled veteran a rating based on the veteran's individual unemployability. *See* 38 C.F.R. § 4.16 (2018). Veterans with certain disabilities or limitations may also be awarded special monthly compensation. *See* 38 U.S.C. § 1114. We emphasize that these are merely examples of the various tools with which VA is equipped to carry out its duty to maximize benefits.

We hold that VA's duty to maximize benefits requires it to first exhaust *all* schedular alternatives for rating a disability *before* the extraschedular analysis is triggered. This is a threshold question intended to ensure that VA has satisfied its duty to maximize benefits by examining all possible rating methods in search of the highest level of established compensation as a schedular matter before resorting to the extraschedular referral process. Further, while we discussed above several schedular rating tools VA may use in satisfying its duty to maximize benefits, we emphasize again that this duty requires VA to search *all* avenues of schedular rating before resorting to an extraschedular analysis. The Board is not required to discuss each of these tools in every case, but it must do so when possible schedular alternatives for rating a disability are either raised by the claimant or reasonably raised by the record. *See Robinson*, 21 Vet.App. at 553. Focusing on the full scope of schedular rating devices will significantly reduce the need to address extraschedular referral, reserving it for those cases that are truly "exceptional."

Given this disposition, the Court need not address the remaining arguments and issues raised by the appellant. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001). In pursuing his case on remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court. *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018). The Board must consider any such evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously. 38 U.S.C. §§ 5109B, 7112.

### III. CONCLUSION

That portion of the Board's December 8, 2016, decision denying the appellant an increased rating for bilateral hearing loss is SET ASIDE and the matter REMANDED.