# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-5998

MARVIN L. LOYD, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 10, 2025)                                    Decided May 8, 2025)

*Amy F. Odom*, of Providence, Rhode Island, for the appellant.

*Ronen Z. Morris*, with whom *Kennedy W. Sattler*, Appellate Attorney; *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before ALLEN, *Chief Judge*, and BARTLEY and JAQUITH, *Judges*.

ALLEN, *Chief Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

ALLEN, *Chief Judge*: Enhancing a claimant's choice was one of the prime objectives Congress sought to achieve when it enacted the Veteran Appeals Improvement and Modernization Act of 2017 (AMA).[1] Under the AMA, claimants get to choose among three procedural "actions" when they are dissatisfied with an initial, unfavorable VA decision on a claim.[2] Congress explained that the AMA "would empower [v]eterans by providing them with the ability to tailor the process to meet their individual needs—[a] choice that is not available in the [legacy] appeals process."[3] And as with choices in other contexts, a claimant's choices under the AMA about how

---

[1] Pub. L. 115-55, 131 Stat. 1105 (Aug. 23, 2017); *see* VA Claims and Appeals Modernization, 83 Fed. Reg. 39818, 39827 ("[F]lexibility and choice are key objectives of the new statutory framework.").

[2] *See* 38 U.S.C. §§ 5104C(a)(1)(A)-(C), 5104B, 5108, 7105; *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.* (*MVA*), 7 F.4th 1110, 1119 (Fed. Cir. 2021); *see also* Sen. Rep. 115-126, at *32 (Noting the importance "to provide Veterans with meaningful choice in how their appeal is handled."); VA Claims and Appeals Modernization, 84 Fed. Reg. at 143 ("[N]ew 38 U.S.C. [§] 5104C provides claimants with a choice of review options following receipt of an adverse initial VA decision."). Of course, the AMA provides options for claimants to address decisions after an initial decision in a claim stream. Here, we focus on actions after an initial decision because those are the facts of appellant's situation.

[3] Sen. Rep. 115-126, at *30.

to proceed following an unfavorable decision have consequences. As we will explain, this appeal addresses the result of a claimant's choice to file a supplemental claim under 38 U.S.C. § 5104C(a) following an initial unfavorable agency of original jurisdiction (AOJ) decision on a claim.[4]

Appellant Marvin L. Loyd, served the Nation honorably in the U.S. Army from January 1971 to January 1973, November 1990 to July 1991, and January to September 1997.[5] In this appeal, which is timely and over which the Court has jurisdiction,[6] he contests an August 11, 2022, Board of Veterans' Appeals (Board) decision that declined to readjudicate his claim for service connection for a left eye disability because he had not submitted new and relevant evidence concerning his claim.[7]

We will explore the issues before us in much greater detail below. But some context is helpful at this juncture. Appellant argues that the Board erred by considering whether he had submitted new and relevant evidence sufficient to readjudicate his claim. Instead, he maintains the Board should have reviewed the merits of the claim denied in the initial AOJ decision—service connection for a left eye disability. Appellant contends that because he filed a supplemental claim within 1 year of the initial denial of his claim, he satisfied the rules of continuous pursuit under the AMA. So, he continues, when he subsequently appealed to the Board following the denial of his supplemental claim, the merits of his initial claim remained open for the Board to review even though VA had denied the supplemental claim because the AOJ concluded that he did not submit new and relevant evidence. This matter was referred to a panel of the Court to address these arguments about the significance and effect of the filing of a supplemental claim within 1 year of an unfavorable AOJ decision under the AMA.

---

[4] "The term 'agency of original jurisdiction' means the activity which entered the original determination with regard to a claim for benefits under laws administered by the Secretary." 38 U.S.C. § 101(34). Typically, the AOJ is a VA regional office (RO), which is the case here.

[5] Record (R.) at 3336, 3341, 5900.

[6] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[7] R. at 5-11. The Board remanded nine additional issues: (1) service connection for a left foot disability; (2) service connection for a right foot disability; (3) service connection for chronic fatigue; (4) an effective date before April 17, 2019, for a total disability rating for service-connected PTSD, including consideration of entitlement to a total disability rating based on individual unemployability (TDIU); (5) a disability rating greater than 10% for right eye scotoma, including consideration of entitlement to TDIU; (6) an initial disability rating greater than 20% for right lower extremity residual weakness, including consideration of entitlement to TDIU; (7) a higher rate of special monthly compensation (SMC); (8) an effective date before April 17, 2019, for SMC based on housebound status; and (9) an effective date before August 12, 2019, for the grant of basic eligibility to dependents' educational assistance benefits under Chapter 35 of title 38 of the U.S. Code. R. at 6-10. We lack jurisdiction over these remanded matters. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order).

We held oral argument on February 10, 2025, at Stetson University College of Law in Gulfport, Florida.[8] We thank the students, staff, and faculty of the College of Law for their hospitality during our visit.

As we will explain in more detail below, we hold that the law requires that when a supplemental claim is filed, the submission of new and relevant evidence is also required before VA may review or readjudicate the merits of a claim. So, if the AOJ denies the supplemental claim because a claimant has not submitted new and relevant evidence, the issue before the Board on an appeal from that decision is limited to whether the evidence a claimant submitted was, in fact, new and relevant.[9] Moreover, under the AMA, although a supplemental claim can be used to avert finality of an initial denial of a claim through continuous pursuit for effective date purposes, it *cannot* be used to keep open the merits of an initial claim if a claimant has not submitted new and relevant evidence. Therefore, we conclude that the Board did not commit prejudicial error here when it determined as a threshold question that readjudication was not proper because appellant had failed to submit new and relevant evidence and, therefore, did not address the merits of the underlying claim. And because appellant does not contest the Board's determination about whether the evidence that he submitted was new and relevant, we will affirm the Board's decision.

## I. BACKGROUND

### A. Procedural History

In August 1992, an RO, which we will refer to as the AOJ throughout this decision, granted appellant service connection for hypertension and assigned July 25, 1991, the day after appellant was discharged from his second period of active duty service, as the effective date for service connection for that condition.[10] In April 2019, appellant had a stroke and, 3 months later, the AOJ granted service connection for a cerebral vascular accident (stroke) secondary to service-connected

---

[8] Oral Argument (OA), *Loyd v. Collins*, U.S. Vet. App. 22-5998 (oral argument held Feb. 10, 2025), https://www.youtube.com/watch?v=kP-AAtzLJE098.

[9] To be clear, we leave for another day whether the Board could reach the merits in the first instance if it concluded that the evidence a claimant submitted was new and relevant contrary to the AOJ's determination or whether it would be required to remand the matter to the AOJ to consider the merits in the first instance. That scenario is not presented in the appeal before us.

[10] R. at 6401-02 (1992 RO decision). In its August 1992 rating decision, the AOJ also granted service connection for a right arm condition and denied service connection for a respiratory condition. However, these disabilities are not subject to the appeal before us today. So, we will not discuss them further.

hypertension.[11] In August 2019, appellant then sought disability benefits for a bilateral eye condition, asserting that it was related to his now service-connected stroke.[12]

In September 2019, appellant underwent a VA bilateral eye examination, and the examiner diagnosed right eye scotoma, opining that the condition was "at least as likely as not proximately due to or the result of [appellant's] service[-]connected condition."[13] The VA examiner explained that "[i]t is medically recognized that [strokes] can cause visual field defects/scotomata."[14] The VA examiner also diagnosed appellant with bilateral posterior vitreous detachment, cataracts, and dermatochalasis.[15] But the examiner explained that these diagnoses were not likely due to appellant's service-connected stroke, noting they "are all common, age-related conditions usually not associated with or caused by [strokes]."[16]

On November 22, 2019, the AOJ notified appellant that it had granted service connection for a right eye condition but denied service connection for a left eye condition in a November 20, 2019, rating decision.[17] On November 17, 2020, appellant, through counsel, filed a supplemental claim concerning the November 2019 AOJ decision, listing among other claims at issue, entitlement to service connection for a left eye condition.[18] On December 2, 2020, the AOJ sent notice to appellant of its November 20, 2020, rating decision that denied his supplemental claim because he failed to submit new and relevant evidence.[19] On November 29, 2021, appellant filed a Notice of Disagreement (NOD) with the December 2020 AOJ decision, choosing the evidence submission docket.[20]

---

[11] R. at 2157-62 (July 16, 2019, rating decision), 2203-09 (July 2019 VA examination).

[12] R. at 2136-40 (Aug. 2019 VA Form 21-526EZ).

[13] R. at 1463 (Sept. 2019 VA examination).

[14] *Id.*

[15] R. at 1470.

[16] R. at 1464.

[17] R. at 1143 (Nov. 2019 VA notice letter), 1188-92 (Nov. 2019 AOJ decision).

[18] R. at 971-72 (VA Form 20-0995, Decision Review Request: Supplemental Claim), 1108-09 (VA Form 21-22a, Appointment of Individual as Claimant's Representative). It is unclear what, if any, evidence appellant submitted along with his supplemental claim. Regardless, the AOJ and then the Board found that appellant had not submitted new and relevant evidence, a determination that appellant does not challenge on appeal. *See* OA at 50:40-51:48.

[19] R. at 759-70 (Dec. 2020 notice letter), 771-75 (Nov. 2020 AOJ decision).

[20] R. at 110-11.

In August 2022, the Board issued its decision on appeal denying readjudication of appellant's left eye claim because he had not submitted new and relevant evidence.[21] The Board explained that

> The [v]eteran previously submitted a claim for entitlement to service connection for a left eye disability[,] which was denied in a November 2019 rating decision. His claim was denied on the basis that the disability was neither incurred in service nor caused by a service-connected disability. The *[v]eteran then sought readjudication of this claim in November 2020*. In connection with the [v]eteran's claim for readjudication, he has not provided any additional evidence, argument, or alternative theory of entitlement to establish his left eye disability was either incurred in service or caused by a service-connected disability. As such, *new and relevant evidence has not been received to warrant readjudication of that claim.*[22]

This appeal followed.

## B. Parties' Arguments

### 1. Appellant

Appellant argues that the plain language of section 5104C(a) means that "regardless of whether the claimant seeks administrative review via a supplemental claim, higher []level review [HLR], or review by the Board within [1] year of the RO's initial decision on a claim, it is the *claim*—not the prior decision—that is under review."[23] During oral argument, appellant reiterated that the Board should have adjudicated the merits of his initial left eye claim—whether he was entitled to compensation, not whether he submitted new and relevant evidence.[24] Appellant maintains that if a claimant submits a supplemental claim, without new and relevant evidence and within 1 year of an unfavorable AOJ decision, that claimant is entitled to the same review procedures as if an NOD had been filed following the denial of the initial claim, i.e., review of the merits by the Board.[25] Appellant states that to read section 5104C(a) in any other way, would be inconsistent with the AMA.[26]

---

[21] R. at 5-11.

[22] R. at 6 (emphasis added).

[23] Appellant's Brief (Br.) at 6. We explore the contours of the AMA below.

[24] OA at 50:40-51:48.

[25] OA at 8:46-:55.

[26] Reply Br. at 2.

Appellant also relies on *Calhoun v. McDonough*[27] to support his position. He explains that "[b]y electing a review option within a year of each decision, [he] prevented the November 2019 decision from becoming final and therefore kept the 2019 initial claim alive."[28] In other words, appellant asserts that his November 2020 supplemental claim and November 2021 NOD were both requests to review the 2019 initial left eye *claim.* Appellant requests that the Court set aside the Board's decision as contrary to law and remand the matter for the Board to adjudicate his left eye claim on the merits because he has a right to one review on appeal of the initial denial.

### 2. Secretary

The Secretary argues that the Board's decision is consistent with the statutory and regulatory scheme under the AMA. He asserts that the Board did not treat appellant's supplemental claim as a "separate claim"[29] but instead "properly limited its review to whether [a]ppellant had submitted new and relevant evidence because . . . [it] is a precursory requirement for a supplemental claim to be reviewed or readjudicated."[30] The Secretary explains that the plain language of sections 5104C(a) and 5108, when read together, means that "regardless of when a supplemental claim is filed, the Board cannot adjudicate the merits of the claim . . . until it determines new and relevant evidence has been submitted."[31] The Secretary also asserts that appellant's reliance on *Calhoun* is misguided because that decision concerned a different legal issue than the one presented in this case. In particular, the Secretary notes that *Calhoun* dealt with issues related to the continuous pursuit of a claim for an earlier effective date, which is a downstream issue.[32] Moreover, the Secretary contends that appellant's position runs counter to the AMA's goals because the Board would be "required to unnecessarily address the merits of claims in which it statutorily is not permitted to adjudicate."[33] Finally, the Secretary argues that there is no prejudice here because appellant can file another supplemental claim (even after an unfavorable decision in this Court), and he would be provided readjudication on the merits so long as he

---

[27] 37 Vet.App. 96, 103 (2024).

[28] Appellant's Br. at 5.

[29] Secretary's Br. at 6.

[30] *Id.* at 7 (citing 38 U.S.C. § 5108 and 38 C.F.R. § 3.2501 (2024)).

[31] *Id.* at 10.

[32] *Id*. at 13-15.

[33] *Id.* at 20.

successfully submits new and relevant evidence.[34] And, should he be successful on such a supplemental claim, the effective date for service connection would go back to the date he filed his initial claim (assuming he had continuously pursued the claim all along).[35]

## II. ANALYSIS

Certain undisputed facts frame our discussion. First, appellant had three "actions" from which to choose to respond to the November 2019 AOJ decision that denied service connection for a left eye disability. He chose to file a supplemental claim within 1 year of that decision.[36] Second, appellant chose what to submit with his November 2020 supplemental claim following the November 2019 decision, and in a December 2020 decision, the AOJ determined that his submission did not include new and relevant evidence.[37] Third, again faced with three "actions" to respond to that December 2020 decision, appellant chose to file an NOD, with appeal to the Board, specifically listing the AOJ's December 2020 decision denying readjudication of his left eye disability claim as the decision he was appealing.[38] Fourth, as confirmed during oral argument, appellant is not challenging on appeal the Board's determination that he failed to submit new and relevant evidence with his supplemental claim sufficient to warrant readjudication.[39] And finally, the parties agree that appellant's claim has been continuously pursued since the AOJ issued its initial decision in November 2019.[40]

In its decision, the Board established that it was reviewing the appeal of the several claims appellant had noted in his NOD and because he selected the evidence submission lane, he had 90

---

[34] *Id*. at 21.

[35] Secretary's Br. at 21, OA at 28:53-30:30.

[36] R. at 971; 1192.

[37] R. at 6 (The Board stated that appellant "has not provided any additional evidence, argument, or alternative theory of entitlement" to substantiate his left eye disability claim. . . . "As such, new and relevant evidence has not been received."), OA at 50:40-51:22 (appellant explicitly declined to challenge the Board's finding that no new and relevant evidence was submitted with the supplemental claim). Because appellant does not challenge the Board's finding that he did not submit new and relevant evidence with this supplemental claim, we deem appellant to have abandoned any appeal of that issue. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc).

[38] R. at 110 (VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement)).

[39] OA at 50:40-51:22. We reiterate that appellant *explicitly declined* to challenge the Board's finding in that regard, and any appeal of that issue is abandoned. *See Pederson*, 27 Vet.App. at 281-86.

[40] Secretary's Br. at 21, Reply Br. at 2.

days to submit additional evidence in support of his claims.[41] Among those claims, the Board recognized that, in November 2019, VA denied entitlement to service connection for a left eye disability on the basis that it was "neither incurred in service nor caused by a service-connected disability," and appellant had sought readjudication of that claim the following year through a supplemental claim.[42] However, the Board concluded that readjudication was not warranted because appellant had failed to submit any additional evidence to "establish [that] his left eye disability was either incurred in service or caused by a service-connected disability[,]" and thus, "new and relevant evidence has not been received."[43]

As we will explain in more detail below, appellant's undisputed choices lead us to affirm the Board's decision declining to readjudicate appellant's claim for service connection for a left eye disability. We begin by summarizing the law as it relates to the AMA, with particular emphasis on the role of supplemental claims. Then, we explain that the plain language of the relevant statutes requires the submission of new and relevant evidence in connection with a section 5104C(a) supplemental claim. Along the way, we will also discuss the continuous pursuit of a claim under the AMA and how supplemental claims fit into that concept. Finally, we summarize our conclusions and explain why appellant is not prejudiced by the Board's decision (or our decision today for that matter) because he can continue to pursue his claim with no adverse effect on any effective date to which he may be entitled should he be granted service connection.

A. AMA and Supplemental Claims

In the AMA system, "claimants may . . . choose from three procedural lanes to obtain review of their claim within one year of the initial decision (in contrast to the legacy system's single pathway for appeal to the Board)."[44] Section 5104C identifies those three lanes—what the statute refers to as "actions"—as: (1) filing a request for HLR of the AOJ decision under section 5104B, (2) filing a supplemental claim under section 5108, and (3) filing an NOD to directly appeal to the Board under section 7105.[45] The Federal Circuit has made clear that "[c]laimants may use

---

[41] R. at 6.

[42] *Id.*

[43] *Id.*; *see* OA at 50:40-51:22 (Appellant explicitly declines to challenge the Board's finding that new and relevant evidence was not submitted.).

[44] *MVA*, 7 F.4th at 1119 (citing 38 U.S.C. § 5104C(a)(1)).

[45] *See* 38 U.S.C. §§ 5104C(a)(1)(A)-(C), 5104B, 5108, 7105; *MVA*, 7 F.4th at 1117, 1119.

only one lane at a time,"[46] but "nothing can prohibit [a] claimant from pursuing each administrative review option *in succession*."[47] And we have held that "subsection (a)(2)(A) [of 38 U.S.C. § 5104C] prohibits *concurrent* use of the options that subsection (a)(1) provides."[48]

Appellant here chose to respond to the November 2019 initial rating decision that denied his claim for service connection for a left eye disability by selecting the second "action" under section 5104C(a)(1)—filing a supplemental claim under section 5108.[49] Congress defined a "supplemental claim" under the AMA as "a claim for benefits under laws administered by the Secretary filed by a claimant who had previously filed a claim for the same or similar benefits on the same or similar basis."[50] While their definitions do not differ, the AMA created two types of supplemental claims: (1) supplemental claims filed within 1 year of an AOJ decision and (2) supplemental claims filed more than 1 year after an AOJ decision.[51] And, in section 5108, Congress provides that "[i]f new and relevant evidence is presented or secured with respect to a supplemental claim, the Secretary shall readjudicate the claim taking into consideration all of the evidence of record."[52] Following the statute's mandate about new and relevant evidence concerning a supplemental claim, VA's implementing regulation states that, "[i]f new and relevant evidence is not presented or secured, the [AOJ] will issue a decision finding that there was insufficient evidence to readjudicate the claim."[53]

---

[46] *MVA*, 7 F.4th at 1119 (citing 38 U.S.C. § 5104C(a)(2)(A)).

[47] *Id.* at 1134 (citing 38 U.S.C. § 5104C(a)(2)(B)) (emphasis in original).

[48] *Terry v. McDonough*, 37 Vet.App. 1, 11 (2023) (emphasis in original).

[49] R. at 971-72. There is no dispute that appellant filed his supplemental claim within 1 year of the November 2019 rating decision.

[50] 38 U.S.C. § 101(36); *see Jackson v. McDonough*, 37 Vet.App. 277, 285 (2024).

[51] 38 U.S.C. §§ 5104C(a)-(b); *see Jackson*, 37 Vet.App. at 285-86. As we explain below, the difference between the two types of supplemental claims relates to the assignment of an effective date. For supplemental claims filed within 1 year of an AOJ decision, a claimant's effective date can go back to the filing of the initial claim because they have continuously pursued their claim. In contrast, for the second type of supplemental claim, the effective date will generally be the date a claimant filed the supplemental claim because the claimant will not have continuously pursued the initial claim. *See MVA*, 7 F.4th at 1134 ("Aside from the timing of when they are filed, § 5104C(a) and § 5104C(b) supplemental claims also differ in two additional ways: *their effective dates* and []VA's duty to notify.") (emphasis added).

[52] 38 U.S.C. § 5108(a).

[53] 38 C.F.R. § 3.2501 (2024).

9

B. New and Relevant Evidence Required Under Section 5104C(a)

Appellant argues that reading sections 5104C(a) and 5108 together as the Secretary suggests—that is, requiring the submission of new and relevant evidence with respect to the supplemental claim under section 5104C(a)—is inconsistent with the plain language of the statutes, deprives a claimant's right to "one review on appeal" under 38 U.S.C. § 7104(a), and runs afoul the goals of the AMA. We do not agree. Indeed, we conclude that Congress has mandated the approach the Secretary advocates. We will address each of appellant's arguments in turn, beginning with those related to statutory language.

*1. Plain Language of the Statutes*

"Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction."[54] "Courts must [also] exercise their independent judgment in deciding whether an agency has acted within its statutory authority."[55] "[I]nterpretation of a statute . . . is a question of law,"[56] and "[t]he Court reviews statutory construction questions de novo."[57] It is well settled that when interpreting a statute, "[w]e look to the plain meaning of the statute, and when we find the plain meaning, our job is simply to apply it."[58] In doing so, "'we look first to [the statutory] language, giving the words used their ordinary meaning.'"[59] But we don't put blinders on because, "[c]ontext always matters."[60] In sum, if the statutory language is unambiguous and "the statutory scheme is coherent and consistent," then our statutory inquiry ends.[61]

Here, we begin with section 5104C. As we discussed earlier, in subsection (a), Congress enumerated three "actions" a claimant could take following an initial decision on a claim.[62] One

---

[54] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024).

[55] *Id.* at 412.

[56] *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003); *see Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[57] *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019) (citing 38 U.S.C. § 7261(a)(1)).

[58] *Frantzis v. McDonough*, 35 Vet.App. 354, 360-61 (2022), *aff'd*, 104 F.4th 262 (Fed. Cir. 2024); *see Kisor v. Wilkie*, 588 U.S. 558, 574-75 (2019); *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018); *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012).

[59] *Casey v. Wilkie*, 31 Vet.App. 260, 265 (2019).

[60] *Van Dermark v. McDonough*, 57 F.4th 1374, 1381 (Fed. Cir. 2023); *see Casey*, 31 Vet.App. at 265.

[61] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

[62] 38 U.S.C. § 5104C. The heading to this section refers to the "options" available to a claimant following an unfavorable decision while the statutory text refers to "actions" a claimant may take.

10

of these "actions" is that a claimant can "[f]ile a supplemental claim under section 5108" within 1 year of an unfavorable AOJ decision.[63] This language is unambiguous. Congress did not leave us to guess where to look to determine the contours of the "supplemental claim" that was one of the "actions" a claimant could take following an initial unfavorable AOJ decision. Congress clearly instructs us to look to section 5108 for guidance if a claimant chooses to file a supplemental claim.

Turning to section 5108, Congress begins its discussion of supplemental claims by stating that "[i]f new and relevant evidence is presented or secured with respect to a supplemental claim, the Secretary shall readjudicate the claim taking into consideration all of the evidence of record."[64] Congress' use of the conditional term "if," plainly means that VA must *first* determine that a claimant has submitted new and relevant evidence *before* it takes action on the supplemental claim on the merits.[65] Given the plain language Congress employed in section 5108, there simply is no other way to read this statutory provision.[66] VA's implementing regulation reinforces this plain reading of the statute. Specifically, VA recognized that the answer to the threshold question— whether new and relevant evidence is presented or secured—dictates its ensuing actions. For example, if new and relevant evidence is presented or secured, the claim can be readjudicated "taking into consideration all of the evidence of record[,]" and if not, the AOJ "will issue a decision finding that there was insufficient evidence to readjudicate the claim."[67] And that is precisely what the AOJ did here. Considering the plain language of sections 5104(c)(a) and 5108, we conclude that Congress has mandated that when filing a supplemental claim, the claimant must submit new and relevant evidence before the AOJ can review or readjudicate the merits of the claim.

Appellant's argument flies in the face of the plain language that Congress used under the AMA. Appellant contends that "under the plain text of section 5104C, [his] November 2020 supplemental claim and November 2021 NOD were both requests to review the 2019 initial claim

---

[63] 38 U.S.C. § 5104C(a)(1)(B).

[64] 38 U.S.C. § 5108.

[65] *See* THE CHICAGO MANUAL OF STYLE ¶ 5.235 (18th ed. 2024) ("A conditional clause . . . [is] typically introduced by *if* or *unless* . . . establishing the condition in a conditional sentence. Usually this is a direct condition, indicating that the main clause . . . is dependent on the condition being fulfilled.").

[66] "If" means "in the event of" or "so long as." MERRIAM-WEBSTER UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/if (last visited May 6, 2025); *see Perrin v. United States*, 444 U.S. 37, 42, (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

[67] 38 C.F.R. § 3.2501.

11

for service connection for a left eye disability."[68] To reach this conclusion, appellant asserts that when a claimant files a section 5104C(a) supplemental claim, as he did here, it is a continuation of the underlying claim obviating the need for readjudication and, thus, there is no need to submit new and relevant evidence. Effectively, appellant sees no difference between the filing of a supplemental claim and the filing of an NOD under section 5104C(a).[69] There is absolutely no textual support for appellant's argument. Indeed, this argument directly contradicts the statutory text. Congress explicitly created three "actions" a claimant could take under section 5104C(a), each of which operates differently. We reject appellant's invitation to read section 5104C(a) in a way that essentially negates what Congress expressly provided. We are not at liberty to render some parts of the delineated process effectively redundant.[70] In other words, we don't read words out of statutes.

Appellant's extended argument fares no better given the plain language of the relevant statutes. In that regard, appellant argues that the requirement to submit new and relevant evidence set out in section 5108 does not apply to a supplemental claim under section 5104C(a).[71] Rather, he maintains that requirement is only meant for section 5104C(b) supplemental claims—that is those supplemental claims filed more than 1 year after an unfavorable AOJ decision.[72] He posits that a section 5104C(a) supplemental claim seeks review of an AOJ decision, whereas a section 5014C(b) supplemental claim seeks readjudication of an AOJ decision.

Again, appellant's argument is entirely divorced from the statutes that Congress enacted. Section 5104C(a) provides three "actions" a claimant can take following an adverse initial AOJ decision. One of those "actions" is to file supplemental claim. But Congress specifically provided that the supplemental claim is one "under section 5108 of this title."[73] And as we've explained, section 5108 unambiguously requires that a claimant submit new and relevant evidence *before* the

---

[68] Appellant's Br. at 8.

[69] OA at 8:40-:57.

[70] *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (quoting 2A Norman J. Singer, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (stating that the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme").

[71] Appellant's Br. at 10-12; Reply Br. at 5-6.

[72] *Id.*

[73] 38 U.S.C. § 5104C(a)(1)(B).

12

AOJ is required to take any action concerning the merits of the claim.[74] Appellant doesn't explain how we can ignore what Congress said other than to baldly state that a supplemental claim is meant to review the initial decision even without the submission of new and relevant evidence. But saying something, even repeatedly and forcefully, doesn't make it so. Our job is to implement the statutes that Congress enacted.

Moreover, appellant's argument ignores the fact that under both sections 5104C(a) and 5104C(b), Congress used the same language to describe a supplemental claim. In both sections, Congress explicitly states that a claimant may "[f]ile a supplemental claim under section 5108 of this title."[75] Given Congress' deliberate choice to employ the same language in these two statutory provisions, it is lost on us how appellant can maintain that new and relevant evidence is only required when proceeding under subsection (b). At the risk of being repetitive, section 5108 unambiguously requires new and relevant evidence for a supplemental claim to be successful. That statute makes no distinction about whether a supplemental claim has been submitted within 1 year of an initial unfavorable AOJ decision or submitted outside of that 1-year window. If Congress had wanted to create the distinction that appellant manufactures, it could have done so. It did not and, just as we don't read words out of a statute, we are not at liberty to add the language appellant needs to prevail either.[76]

Appellant continues by arguing that reading section 5104C(a)'s reference to a supplemental claim as embodying a requirement to submit new and relevant evidence inhibits a claimant's ability to successive review under section 5104C(a)(2)(B) and contradicts our decision in *Terry*.[77] We disagree. Section 5104C(a)(2)(B) states that "[n]othing in this subsection shall prohibit a claimant from taking any of the actions set forth in paragraph (1) in succession with respect to a claim or an issue contained within the claim."[78] In *Terry*, we explained that part of the reason why

---

[74] 38 U.S.C. § 5108.

[75] 38 U.S.C. §§ 5104C(a)(1)(B), 5104C(b).

[76] *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (explaining that it runs contrary to the principles of statutory interpretation to "add words to the law to produce what is thought to be a desirable result."); *see also Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 358 (2024) (reaffirming and citing that part of *EEOC* explaining that "we will not 'add words to the law' to achieve what some . . . might think 'a desirable result.'"); *Russello v. U.S.*, 464 U.S. 16, 23 (1983) ("[I]t is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion" of particular language within a statute.).

[77] Appellant's Br. at 10.

[78] 38 U.S.C. § 5104C(a)(2)(B).

13

we rejected the Secretary's interpretation that the word "any" in section 5104C(a)(1) meant "one" was because it would render the entirety of section 5104C(a)(2)(B) superfluous. We clarified that:

> under the Secretary's interpretation, when a claimant selects one of the actions set forth in subsections 5104C(a)(1)(A)-(C) following 'a decision on a claim,' nothing more than can be done; the appeal book (so to speak) on that claim is closed. All we are then left with is the decision that VA issues in response to the option that a claimant selected. To be sure, a claimant could make choices about how to proceed with respect to that later decision. But the Secretary's interpretation *never* permits a situation in which a claimant may take another action on the first decision.[79]

Ultimately, we held that "subsection 5104C(a) provides that a claimant may file more than one administrative review request *within 1 year of an initial AOJ decision on a claim,* so long as those administrative reviews do not run concurrently."[80]

Contrary to appellant's assertions, the Board's actions here (deciding the question of readjudication under the supplemental claim action that appellant selected rather than reviewing the merits of the initial unfavorable AOJ decision) did not prevent appellant from taking successive action under section 5104C(a). Rather, the facts here simply do not allow for it.

In *Terry*, appellant began his claim in the legacy system and then opted into the AMA system.[81] As a result, appellant was able to take advantage of more than one of the choices that the AMA had to offer under section 5104C. First, appellant chose HLR of his legacy AOJ decision, which the AOJ denied 2 months later (AMA AOJ decision).[82] Taking advantage of the AOJ's quick decision denying his legacy AOJ decision via the HLR action, appellant chose to file a supplemental claim from the legacy AOJ decision, under section 5104C(b), because it was filed more than 1 year after the legacy AOJ decision was issued.[83] Three months later, the AOJ denied readjudication of appellant's legacy AOJ decision via the supplemental claim action for not submitting new and relevant evidence.[84] Thereafter, still within 1 year of the AMA AOJ decision denying his claim based on the HLR action he first elected, appellant filed a timely NOD.[85] Thus,

---

[79] *Terry*, 37 Vet.App. at 11.

[80] *Id.* at 14 (emphasis added).

[81] *Id.* at 6, 14.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Terry*, 37 Vet.App. at 6.

14

the AOJ's quick decision-making allowed appellant to take successive action with respect to the AMA AOJ decision—i.e., electing both HLR and an NOD action within 1 year of an unfavorable AOJ decision. Additionally, appellant was also able to file a supplemental claim from the legacy AOJ decision, taking full advantage of the choices available under the AMA.

It just so happened that in *Terry*, appellant had the time to request all three review options within 1 year of the AMA AOJ decision. This is not the case here. Appellant was denied service connection for a left eye disability in a November 20, 2019, AOJ decision, and it was not until November 17, 2020, almost a full year later, that he chose to file his supplemental claim and begin the review process. Thus, there was no time left for appellant to take the successive actions that occurred in *Terry*. And perhaps most significantly, *Terry* simply did not have to grapple with the effect of filing a supplemental claim under section 5104C(a) in terms of the new and relevant evidence requirement.[86]

### 2. Right to One Review on Appeal

Appellant next argues that requiring the submission of new and relevant evidence in electing to use the option of a supplemental claim under section 5104C(a) infringes on his statutory right to one review on appeal. He asserts that he is now prohibited from obtaining a Board review of the merits of the November 2019 denial of his claim for service connection for a left eye disability. And he continues by maintaining that this supposed prohibition violates section 7104(a).[87] However, this is simply not true. First, appellant's November 2021 NOD form seeking direct appeal to the Board specifically identified the December 2020 AOJ decision (the one that had determined that he had not submitted new and relevant evidence in connection with his supplemental claim) as the decision being appealed.[88] He did not list the November 2019 AOJ decision.[89] To be sure, appellant is correct that Congress provided that all decisions of the Secretary issued under section 511(a) "shall be subject to one review on appeal."[90] Appellant had a clear right to seek review of the November 2019 rating decision on the merits. But he chose not

---

[86] *Id.* (explaining that in June 2019, Mr. Terry filed a supplemental claim from a June 2017 rating decision with attached documents); *see also Id.* at 9 (see note 8, explaining that section 5104C(b) was not at issue).

[87] Appellant's Br. at 12.

[88] R. at 110.

[89] *Id.*

[90] 38 U.S.C. § 7104(a).

to seek such a review. Instead, he chose to follow a different path—filing a supplemental claim under section 5108. When appellant chose to file that supplemental claim, the AOJ was statutorily obligated to issue a decision that addressed whether new and relevant evidence had been submitted to complete the supplemental claim.[91] Thus, appellant's choice led to a second decision related to the underlying claim on appeal pursuant to the "actions" that Congress provided in section 5104C(a). In other words, per section 7104(a), both the November 2019 rating decision and the December 2020 rating decision were entitled to one review on appeal. Appellant immediately took advantage of that right when he filed an NOD from the December 2020 rating decision confirming the denial of his claim for service connection for a left eye disability because no new and relevant evidence had not been submitted. But appellant chose to take a different path with respect to his right to one review on appeal for the November 2019 rating decision—he elected to pursue a supplemental claim instead of seeking Board review of that decision.

This is where we see clearly that with choice come consequences. There is no question that appellant had the *opportunity* to directly appeal the merits of the November 2019 rating decision that initially denied service connection for a left eye disability, within 1 year of that decision. He could have filed an NOD with a direct appeal to the Board under section 5104C(a)(1)(C),[92] without any new and relevant evidence submission requirement. But he *chose* to take a different "action" under section 5104C(a), a *choice* he was free to make. He *chose* to file a supplemental claim under section 5104C(a)(1)(b), which came with its advantages and disadvantages. One advantage is that appellant allowed himself the opportunity to submit new and relevant evidence to substantiate his claim, and another advantage is that VA's duty to assist in developing evidence was also in play. However, one disadvantage of that choice is that appellant made it more difficult to obtain a merits review of the November 2019 rating decision. And it is important to understand that while it might be more difficult, it is not impossible. To be clear, VA did not deprive appellant of his right to one review on appeal of the November 2019 rating decision. VA simply respected appellant's *choice* to take a different "action" under section 5104C(a). And, as the Secretary points out, even if the Court does not rule in appellant's favor, appellant can submit another supplemental claim within 1 year of this Court's decision, with new and relevant evidence, providing the Board a path to review

---

[91] *See* 38 U.S.C. § 5108.

[92] Section 5104C(a)(1)(C) provides that a claimant can "[f]ile a notice of disagreement under section 7105 of this title." 38 U.S.C. § 5104C(a)(1)(C). Section 7105 addresses the procedures for filing a Board appeal. 38 U.S.C. § 7105.

the merits of that November 2019 rating decision, which would have been readjudicated after the submission of the new and relevant evidence.[93]

### 3. Goals of the AMA

Finally, appellant argues that requiring the submission of new and relevant evidence under section 5104C(a) before the AOJ could review the merits of an underlying claim is somehow contrary to the goals of the AMA. However, given the clarity of the statutory language Congress provided, resorting to far more amorphous concepts of goals or purposes is not particularly persuasive. But even if we leave aside that point, we are not convinced by appellant's contention. As the Federal Circuit explained, the legacy system permitted "'continuous evidence gathering and readjudication of the same matters' that caused appeals to 'churn' in the system" contributing to delay.[94] Congress created the AMA to reduce that delay by establishing a "three-lane system . . . by allowing claimants to choose from new and more efficient review pathways specifically tailored [to] their needs."[95] To harken back to the start of this opinion, Congress meant to accomplish its efficiency-based goals by enhancing claimant's choices. Claimants can elect their own path based on the needs of their cases. So, while not perfect by any means, the situation we have before us shows how the AMA can work as Congress intended—by allowing a claimant to tailor their approach to adverse VA actions in a manner they believe best suits their case. To be sure, appellant is not pleased with how his choices played out. But that is not a reflection that what has happened in this case is at odds with the goals of the AMA.

### C. Continuous Pursuit and Forestalling Finality

Appellant also argues that because he has continuously pursued his left eye disability claim through the filing of a supplemental claim within 1 year of the November 2019 AOJ decision, the finality of that decision was kept alive or forestalled.[96] So, he continues, the merits of the initial claim were left open for the Board to review when he appealed the December 2020 decision on his supplemental claim.[97] To support this position, he relies on our decision in *Calhoun*.[98] We

---

[93] Secretary's Br. at 21.

[94] *MVA*, 7 F.4th at 1118 (citing Sen. Rep. 115-126, at *29); *see also* Sen. Rep. 115-126, at *27.

[95] *MVA*, 7 F.4th at 1140.

[96] Appellant's Br. at 4-5 (citing *Calhoun*, 37 Vet. App. at 102).

[97] *Id.*

[98] *Id.*

17

disagree with appellant because he misunderstands the import of that decision and the concept of continuous pursuit under the AMA.

In a nutshell, continuous pursuit under the AMA is about preserving an earlier effective date for an award. As relevant to the factual situation before us, the AMA provides that a supplemental claim filed within 1 year of an initial AOJ decision acts as continuous pursuit of that initial claim, specifically, that the initial claim does not become final so long as a claimant files a supplemental claim within the 1-year window.[99] Tellingly, the principle of continuous pursuit is mentioned only once in title 38—in section 5110. And section 5110 sets forth the general rule for assigning effective dates of awards. In particular, section 5110(a)(2) provides that:

> *For purposes of determining the effective date of an award under this section*, the date of application shall be considered the date of the filing of the initial application for a benefit if the claim is *continuously pursued* by filing any of the following, either alone or in succession:
>
> (A) A request for higher-level review under section 5104B of this title on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (B) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (C) A notice of disagreement on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (D) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the Board of Veterans' Appeals issues a decision.
>
> (E) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the Court of Appeals for Veterans Claims issues a decision.[100]

Moreover, in *MVA*, the Federal Circuit recognized that "[s]ection 5110(a)(2) governs the effective date of awards and explains that supplemental claims 'continuously pursued'—i.e, filed within one year of the prior decision from the AOJ. . . are entitled to an effective date reaching back to . . . the initial claim's filing date."[101]

Given that Congress referred to continuous pursuit only once when enacting the AMA and did so in a statute dealing only with effective dates, we fail to see how continuous pursuit concerns

---

[99] 38 U.S.C. § 5110 (a)(2); 38 C.F.R. § 3.2500(c) (2024); *Calhoun*, 37 Vet.App. at 103.

[100] 38 U.S.C. § 5110 (a)(2) (emphasis added); *see* 38 C.F.R. § 3.2500(c).

[101] 7 F.4th at 1134.

18

anything more than what Congress said—preserving an effective date. So, to frame matters under the facts of the case before us, Congress made clear that using a supplemental claim to continuously pursue a claim was an AMA creation to preserve an earlier effective date, and nothing more. We can't find any statutory provision that provides for the approach to continuous pursuit appellant presses here. It would be odd that Congress would have discussed continuous pursuit only in connection with effective dates but somehow actually provided for continuous pursuit to have the broader meaning for which appellant advocates.

We don't think it necessary to go beyond the language Congress used to support our holding. But if we considered interpretative tools beyond that language, the legislative history supports our conclusion.[102] Congress recognized that the AMA allows a veteran to "maintain the original effective date of their claim, regardless of the number of times the veteran appeals the decision, even if the veteran receives an adverse decision at the [Court]."[103] But this position comes with the caveat that "to maintain the original effective date, veterans would be required to submit new and relevant evidence within a year of the most recent decision."[104] And as with the statutory language itself, there is nothing in the legislative history to suggest Congress believed it was doing anything more with the concept of continuous pursuit than providing a means for a claimant to preserve an earlier effective date than would otherwise have been permitted.

And if we turned to regulations implementing the AMA, we reach the same conclusion concerning the effect of continuous pursuit. In its final rule implementing the AMA, VA explained that "claimants are entitled to a VA readjudication based on new and relevant evidence submitted within the one-year appeal period, while their effective date is protected."[105] And in VA's regulations, "continuously pursued issues" are those in which a claimant takes an action within 1 year of the prior AOJ, Board, or Court decision, and "continuously pursued claims" are only listed

---

[102] *See* Sen. Rep. 115-126, at *10 (explaining that under the AMA, "VA would provide that the date of [the] application would be considered the date of filing of the initial application for a benefit if an individual who is dissatisfied with a decision, within 1 year of a decision, seeks a higher-level review, files a supplemental claim, files an appeal to the Board, or files a supplemental claim after a Board decision. Further, the effective date would be preserved if the individual continuously pursues a new option to be reviewed at VA under the new appeals system within 1 year of the latest decision.").

[103] H.R. Rep. 115-135, at *2; *see also* Sen. Rep. 115-126, at *10.

[104] *Id.* at *2-3.

[105] VA Claims and Appeals Modernization, 84 Fed. Reg. at 143.

19

under subsection (h) providing guidance for effective dates.[106] In short, there is nothing in the AMA statutes, legislative history, or regulations that provides any support for appellant's argument that continuous pursuit has an effect other than the preservation of effective dates tied to the filing of the initial claim at issue.

Turning to caselaw, in *Calhoun*, we examined section 5110 to decide whether the filing of an AMA supplemental claim challenging the Board's denial of an earlier effective date for entitlement to TDIU within 1 year of that Board decision qualified as continuous pursuit for *effective date purposes.* We held that it does, explaining that "the finality of an AMA benefits determination is forestalled when a claim is continuously pursued—that is, whenever a claimant elects one of the three review lanes" listed in section 5104C(a).[107] We further held that claims that are continuously pursued, like "when a supplemental claim is filed within 1 year of a Board or Court decision," which allows for the assignment of an effective date "as early as the date the claim was initially filed."[108] We reaffirmed that holding in *Jackson*, stating that "[w]hen continuously pursued, *a successful 5104C(a) supplemental claim* can preserve the original application date as the effective date."[109]

Appellant relies on *Calhoun* to support his argument that because he filed what he terms a section 5104C(a) supplemental claim, the finality of the November 2019 AOJ decision is abated in a way that allows the Board to review the merits of his underlying claim. If one takes snippets from our decision in *Calhoun*, appellant's reliance on that decision may appear reasonable. But we don't read opinions in snippets. We consider them in the context of the situation presented to the Court. There are significant factual distinctions between *Calhoun* and the case before us today that undercut appellant's reliance on that precedent. Most significantly perhaps, in *Calhoun*, appellant had submitted new and relevant evidence along with his supplemental claim.[110] So, the Court had no occasion to consider whether the Board could reach the merits of the underlying claim because the AOJ had already determined that new and relevant evidence had been submitted. In fact, if the

---

[106] *See* 38 C.F.R. § 3.2500(c), (h).

[107] 37 Vet.App. at 102.

[108] *Id.* at 103

[109] *Jackson*, 37 Vet.App. at 286 (citing 38 U.S.C. § 5110(a)(2)(B); *MVA*, 7 F.4th at 1134; *Calhoun*, 37 Vet.App. at 103) (emphasis added).

[110] *Calhoun*, 37 Vet. App. at 99 (citing R. at 98-101, referencing an AOJ decision that found that appellant submitted new and relevant evidence in support of his supplemental claim.).

Court had addressed that issue, it likely would have provided an inappropriate advisory opinion.[111] Moreover, appellant in *Calhoun* was already in receipt of VA disability benefits, and the appeal involved an AOJ decision that decided the proper effective date, which is a downstream issue that can only be addressed *after* a benefit has been awarded.[112] We have not reached any downstream issues in the matter on appeal with respect to appellant's left eye disability claim. And finally, because *Calhoun* dealt with determining the proper effective date of an already awarded benefit, it is not surprising that the Court employed the language of finality in its decision. Essentially, the Court considered whether the rule under the legacy system that one could not advance a freestanding claim for an earlier effective date precluded raising that issue in a claim stream that had been continuously pursued, including via a supplemental claim.[113] Because the legacy system's preclusion on freestanding earlier effective claims was premised on the finality of earlier unappealed decisions,[114] the Court's discussion of principles of finality in the context of continuous pursuit under the AMA made perfect sense in context. But it tells us precious little about appellant's arguments in this case.

Finally, appellant's position that continuous pursuit rules keep the merits of his claim open such that the Board was required to consider the merits of the underlying claim regardless of whether he submitted new and relevant evidence would render that requirement entirely superfluous. As we already explained above, Congress explicitly provided that the supplemental claim that a claimant could pursue under section 5104C(a) was subject to section 5108. And that section expressly requires the submission of new and relevant evidence before any action on the merits is appropriate. Not to put too fine a point on the matter, but appellant basically ignores the plain language Congress employed concerning supplemental claims. We simply can't ignore the congressional command that the submission of new and relevant evidence in connection with a supplemental claim is a prerequisite to doing anything with respect to the merits of a claim.[115]

---

[111] *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (explaining that under the doctrine prohibiting advisory opinions, "federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))); *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008).

[112] *See Evans v. West*, 12 Vet.App. 396, 399 (1999).

[113] *Calhoun*, 37 Vet. App at 103.

[114] *See Rudd v. Nicholson*, 20 Vet.App. 296, 299 (2006).

[115] *See Roper*, 20 Vet.App. at 178; *Marx*, 568 U.S. at 386; *see also Russello*, 464 U.S. at 23.

21

D. Summary

In sum, appellant chose to file a supplemental claim as his first "action" following an initial adverse AOJ decision under section 5104C(a). This choice has advantages, particularly along the lines of evidentiary development. However, one disadvantage of the choice to use a supplemental claim is that a review of the merits of the underlying claim comes only after a determination has been made that a claimant has submitted new and relevant evidence. That is simply the result of appellant's choice.

In light of the foregoing, we conclude that the Board did not err when it only addressed the question that was squarely presented before it—whether readjudication of appellant's left eye disability claim was warranted based on the submission of new and relevant evidence. Appellant does not challenge the Board's determination that he failed to submit new and relevant evidence to complete the supplemental claim he chose to file.[116] So, he has abandoned any appeal of that finding.[117] Therefore, we will affirm the Board's decision.

## III. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record, and the governing law, the Court AFFIRMS the August 11, 2022, Board decision.

JAQUITH, *Judge*, dissenting. Choices have consequences, the majority says, and I agree—when foundational principles are followed so the choice is an informed one and the consequences are fair and foreseeable.[118] But the majority's affirmance of the uninformative Board decision and

---

[116] OA at 50:40-51:22.

[117] *See Pederson*, 27 Vet.App. at 281-86. Our dissenting colleague identifies an additional issue on appeal—whether VA satisfied its duty to notify in this matter. However, the represented veteran did not raise or even hint at a notice issue here, and so we will not address it further. *See Mason v. Shinseki*, 25 Vet.App. 83, 94-95 (2011).

[118] Ensuring fairness was a primary purpose and pillar of Congress appeals modernization, one that VA embraced. *See Brack v. McDonough*, 37 Vet.App. 172, 182-82 (2024) (Jaquith, J., concurring). It is surprising that the majority deems notice not raised when the majority put it front and center by grounding its opinion on choices having consequences. The majority's focus on choice is understandable but its flight from the foundational requirements for informing and relying on that choice is not. This is not really an unraised issue. The parties' arguments are quite focused on what the statutes, regulations, and VA's explanations tell claimants about their choices under the AMA. Veterans have a statutory right to one review on appeal to the Secretary that is finally decided by the Board based on its consideration of all evidence and material of record, 38 U.S.C. § 7104(a), and "a claimant must have knowledge of that right, and must intend, voluntarily and freely, to relinquish or surrender that right." *Jarrell v. Nicholson*, 20 Vet.App. 326, 338 (2006) (Hagel, J., dissenting); *see Janssen v. Principi*, 15 Vet.App. 370, 374 (2001). As described in detail at pages 28-30, *infra*, that knowledge and intent standard is not met by the supplemental claim process at issue here. In reviewing the resulting Board decision, the Court is not limited to choosing between the two parties' litigating

22

embrace of the Secretary's litigation posture on supplemental claims consideration fails to fulfill VA's assurances to veterans in favor of a forest of no return[119] that cannot be what Congress intended,[120] so I respectfully dissent.

First Sergeant Marvin L. Loyd earned a Bronze Star Medal and a Southwest Asia Service Medal with bronze service stars for meritorious achievement while engaged in military campaigns against enemy forces during the Gulf War in 1991.[121] He was noted to be hypertensive in service and granted service connection and compensation for that disability from the day after his release from active duty.[122] In 1997, he was ordered to active duty again for service in Germany in support of Operation Joint Guard.[123] In April 2019, the veteran's hypertension resulted in a stroke.[124] And his stroke led to weakness of his right upper and lower extremities.[125] "'Spiderweb-like' spots appeared in vision of both [of the veteran's] eyes around the same time [as his stroke]."[126] His claim for a bilateral eye condition led to compensation for a right eye disability, but the AOJ denied service connection for his left eye condition.[127] So the veteran filed a supplemental claim asking the AOJ to review the issue of his "[e]ntitlement to service connection for a left eye condition."[128] When the AOJ denied his supplemental claim, the veteran appealed to the Board.[129]

---

positions—the Court "retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 91, 99 (1991). Indeed, the judicial function is to exercise independent judgment in determining the meaning of the law. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 393-94 (2024).

[119] *See The Forest of No Return*, BABES IN TOYLAND (Disney 1961) (lyrics by Mel Leven) ("This is the Forest of No Return! This is the Forest of No Return! Those who stumble in, Those who fumble in, Never can get out!"), https://www.youtube.com/watch?v=8zQeQunbBmk (last visited May 6, 2025).

[120] *See, e.g.*, *DeBeaord v. Principi*, 18 Vet.App. 357, 367 (2004) ("Congress could not have intended [an absurd result]."). And "an absurd result [is] something courts should avoid in statutory and regulatory interpretation." *Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

[121] R. at 5900.

[122] R. at 6401-02.

[123] R. at 3336.

[124] R. at 2158, 2231.

[125] R. at 2159.

[126] R. at 1470.

[127] R. at 1188-92.

[128] R. at 971.

[129] R. at 110, 759, 772, 774-75.

23

"Bad Facts Make Bad Law"[130]

The Board denied "readjudication," summarily stating only that

> In connection with the [v]eteran's claim for readjudication, he has not provided any additional evidence, argument, or alternative theory of entitlement to establish his left eye disability was either incurred in service or caused by a service-connected disability. As such, new and relevant evidence has not been received to warrant readjudication of that claim.[131]

The veteran contends that his supplemental claim was a request for review of the denial of his claim for disability compensation for his left eye condition, not a separate claim that limited the scope of the Board's review. Both the Secretary and the majority say that the submission of new and relevant evidence is required "for a supplemental claim to be reviewed or readjudicated."[132]

As an initial matter, there is no statutory or regulatory support for such a limitation on the Board's *review*. Section 5108 of title 38 and 38 C.F.R. § 3.2501 both address readjudication of claims, not their review. Even the process perceived by the Secretary and the majority would require the Board to thoroughly review the evidence submitted in support of the initial claim and the evidence submitted in support of the supplemental claim to determine whether the latter evidence was new and relevant. Second, the summary conclusion by the Board in this case, with no analysis and no statement of reasons or bases that addresses the record evidence potentially favorable to the veteran's claim, would ordinarily result in the Court vacating the Board decision.[133] The Board failed to note that the AOJ found that "the evidence submitted [by the veteran was] not new and relevant,"[134] but the AOJ listed new evidence that it considered: the veteran's TDIU application, a statement by the veteran, a statement from CRC Services LLC, and a letter from the veteran's representative, all received November 17, 2020, and VA treatment records from March

---

[130] *Haig v. Agee*, 453 U.S. 280, 319 (1981) (Brennan, J., dissenting) (capitalization altered).

[131] R. at 6.

[132] Secretary's Brief at 7; *ante* at 3.

[133] *See*, *e.g.*, *Todd v. McDonald*, 27 Vet.App. 79, 86 (2014); *Locklear v. Nicholson*, 20 Vet.App. 410, 418 (2006).

[134] R. at 759, 772.

24

16, 2020, through November 13, 2020.[135] Moreover, the Board's statement that the veteran "ha[d] not provided any additional evidence,"[136] appears to be erroneous, or at least misleading.

In addition, the Board failed to note that the AOJ misapplied the standard for determining whether the veteran submitted "new and relevant" evidence. The AOJ accurately described the definition of relevant evidence in § 3.2501(a)(1): "Relevant evidence" means evidence "that tends to prove or disprove a matter at issue in a claim."[137] But the AOJ then applied a more stringent standard by deleting the "tends to" qualifier and telling the veteran that it was denying his supplemental claim because "[t]he evidence from you and your power of attorney submitted in connection with the current claim does not constitute relevant evidence because it does not prove or disprove a matter at issue within your claim."[138]

The shortcomings in the handling of this case by the AOJ and the Board highlight the importance of completely addressing supplemental claims as Congress provided and as VA promised.

<u>The Reported History of Supplemental Claims</u>

Supplemental claims in veterans benefits cases have a long history.  For example, *Flowers v. United States*, 230 F. Supp. 747, 749 (W.D. Okla. 1964), concerned a veteran's February 8, 1952, supplemental claim for a nervous condition. And this Court has considered cases involving supplemental claims that predated the Court's founding. *See, e.g., DeLisio v. Shinseki*, 25 Vet.App. 45, 47, 59 (2011) ("On October 31, 1980, [the veteran] filed 'a supplemental claim . . .  for agent orange condition,'" which the Court determined had remained open); *McGurk v. West*, 16 Vet.App. 289 (table), 1998 WL 740535, at *6 (1998) ("The August 1982 rating decision specifically notes that it was adjudicating a '[s]upplemental claim received on 3–31–82,'" for an increased evaluation of a heart condition); *Kearns v. West*, 16 Vet.App. 173 (table), 1998 WL 536811, at *2 (1998) ("In July 1973[,] the veteran filed a 'supplemental claim' for a liver condition, citing three previous liver biopsies."); *Whitsett v. Brown*, 15 Vet.App. 311 (table), 1997 WL 67809, at *2 (1997) ("In March 1988[,] the appellant submitted a supplemental claim for an 'upper trunk skin condition.'").

---

[135] *Compare* R. at 772 (listing the evidence the AOJ considered in making its November 2020 decision) *with* R. at 1189 (listing the evidence the AOJ considered in making its November 2019 decision).

[136] R. at 6,

[137] R. at 775.

[138] *Id.*

25

The use of supplemental claim *forms* is as least as old as the Court. *See Jaloski v. Brown*, 14 Vet.App. 277 (table), 1994 WL 235999, at *2 (1994) ("In November 1988, appellant filed with the RO a Supplemental Claim seeking service connection for 'secondary glaucoma.' R. at 351. On the form, appellant noted that he had been treated in service for 'eye pathology.' *Id.*"). Nearly a decade before the AMA took effect, VA offered a standard form, VA Form 21-526b, for veterans, their families, and survivors to file a supplemental claim for "increased evaluation of the disabilities for which [the veteran was] already service connected," "service connection for new disabilities," "reopening of previously denied disabilities," and "disabilities secondary to [the veteran's] existing service connected disability(ies)." [139] In 2013, VA acknowledged that it "accepts any claim filed subsequent to the original, initial compensation/pension claim that is submitted in any form," including a claim to reopen, which could "be established using different VA forms such as . . . VA Form 21-526b, Veteran's Supplemental Claim for Compensation."[140]

### The Specific Use of Supplemental Claims Under the AMA

Given this history and the multiple uses of supplemental claims, it is unsurprising that Congress defined the term broadly in the AMA, saying that "'supplemental claim' means a claim for benefits under laws administered by the Secretary filed by a claimant who had previously filed a claim for the same or similar benefits on the same or similar basis."[141] Notably, Congress specified the uses and effects of supplemental claims added by the AMA in chapter 51 of title 38. Chapter 51 "is dedicated to 'Claims, Effective Dates, and Payments,' all of which are aspects of the VA disability system typically under the initial province of the agency of original jurisdiction (AOJ)." *Greer v. McDonough*, 36 Vet.App. 220, 226 (2023). The governing statutes for the Board are in chapter 71. *Id.* "When Congress intended the Board to fulfill certain responsibilities under chapter 51, it explicitly named the Board in the relevant provisions." *Id.* The Board is not mentioned in section 5104C, which empowers a disappointed claimant to file a supplemental claim

---

[139] VA Form 21-526b (July 2009), https://www.google.com/url?sa=t&source=web&rct=j&opi=89978449&url=https://www.reginfo.gov/public/do/DownloadDocument%3FobjectID%3D42225801&ved=2ahUKEwjDmoeEz9-MAxX1MlkFHdUIKWIQFnoECA8QAQ&usg=AOvVaw3LTz4pDDlY19zRcsX_oqEZ (last visited May 6, 2025).

[140] Standard Claims and Appeals Forms, 78 Fed. Reg. 65490-01, 65505 n.2 (Oct. 31, 2013).

[141] 38 U.S.C. § 101(36).

under section 5108 to seek readjudication by the AOJ.[142] With the advent of section 5104C, "following receipt of a rating decision, a claimant was no longer funneled into a single review lane but could choose among several paths, including: (1) filing a supplemental claim and keeping the case before a lower-level adjudicator at the AOJ."[143] As VA put it, "Public Law 115-55 [the AMA] includes a new review option for [v]eterans or claimants who disagree with a VA claims decision known as a 'supplemental claim' that is conducted within the agency of original jurisdiction."[144] In that setting,

> [i]f new and relevant evidence is presented or secured with respect to the supplemental claim, the [AOJ] will readjudicate the claim taking into consideration all of the evidence of record. If new and relevant evidence is not presented or secured, the [AOJ] will issue a decision finding that there was insufficient evidence to readjudicate the claim.[145]

In addition, it is only while the matter is before the AOJ that "VA has a duty to assist claimants in obtaining evidence to substantiate all substantially complete . . . supplemental claims."[146]

The Board also is not mentioned in section 5108. If there was any doubt that the omission was not intentional, the provision that defines the Board's jurisdiction, 38 U.S.C. § 7104, specifically refers to section 5108 but only to make that section applicable to requests for readjudication of Board decisions disallowing claims. 38 U.S.C. § 7104(b).

The Board's review of the AOJ's decision is governed by section 7104(a), which requires that "[d]ecisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation."[147] All evidence and material of record must be considered.

Under the AMA, a claim is not considered finally adjudicated by VA until "the expiration of the period in which to file a review option available under § 3.2500 or disposition on judicial

---

[142] *See* 38 U.S.C. §§ 5104C(a)(1)(B) (within 1 year of an AOJ decision) and 5104C(b) (more than 1 year after an AOJ decision).

[143] *Cooper v. McDonough*, 38 Vet.App. 1, 5 (2024).

[144] VA Claims and Appeals Modernization, 84 Fed. Reg. 138-01, 163 (Jan. 18, 2019).

[145] 38 C.F.R. § 3.2501; *see* 38 U.S.C. § 5108.

[146] 38 C.F.R. § 3.159(c) (2024); *see* 38 U.S.C. § 5103A(e)(2) ("The Secretary's duty to assist . . . shall not apply . . . to review on appeal by the Board.").

[147] 38 U.S.C. § 7104(a),

review where no such review option is available."[148] And "[a] claimant may continuously pursue a claim or an issue by timely and properly filing" a supplemental claim after a decision by the AOJ, and then, after the AOJ decides the supplemental claim, by timely and properly filing an appeal to the Board.[149] Having filed, in succession, a supplemental claim of entitlement to service connection for his left eye condition on November 17, 2020,[150] within 1 year of the of the November 22, 2019, notice of the AOJ rating decision denying service connection,[151] and then a Notice of Disagreement (NOD) on November 29, 2021,[152] within 1 year of the December 2, 2020, notice of the AOJ decision continuing to deny service connection,[153] the veteran unquestionably continuously pursued his left eye claim.[154] "[T]he finality of an AMA benefits determination is forestalled when a claim is continuously pursued."[155] So Mr. Loyd's appeal to the Board was "not seeking to overcome or vitiate the finality of a prior decision because there [was] not yet a final decision," and the Board should have considered the merits of his appeal of the AOJ's denial of service connection for his left eye condition.[156]

Importantly, this conclusion comports with the Secretary's assurances in implementing the AMA, including that:

● "If a supplemental claim is filed within one year of a prior decision, the supplemental claim relates back . . . to the earlier claim. . . . and is considered a continuation of that claim."[157]

● "[A] supplemental claim will be considered part of the earlier claim if the claimant has continuously pursued the earlier claim by filing any of the following, either alone or in succession . . . a supplemental claim, on or before one year after the date on which the [AOJ] issued a decision;

---

[148] 38 C.F.R. § 3.160(d)(2) (2024).

[149] 38 C.F.R. § 3.2500(c); *see* 38 U.S.C. § 5110(a)(2); *Jackson v. McDonough*, 37 Vet. App. 277, 286 (2024) ("[A] supplemental claim can continuously pursue an initial claim.").

[150] R. at 971-72.

[151] R. at 1143-45, 1188-93.

[152] R. at 110-11.

[153] R. at 759-75.

[154] *See* 38 U.S.C. § 5110(a)(2); 38 C.F.R. § 3.2500(c).

[155] *Calhoun v. McDonough*, 37 Vet.App. 96, 102 (2024).

[156] *Id.* at 103-04.

[157] VA Claims and Appeals Modernization, 84 Fed. Reg. at 150.

28

a Notice of Disagreement, on or before one year after the date on which the [AOJ] issued a decision."[158]

● "VA does not have a duty to notify the claimant who files a supplemental claim while continuously pursuing the matter of the information or evidence necessary to substantiate the claim . . . [and t]he exclusion of this pro-claimant obligation also favors treating a continuously pursued supplemental claim as part of the matter stemming from the AOJ's initial decision."[159]

### No Notice of No Merits Review

The December 2020 notice of the AOJ's decision described the veteran's options if he disagreed with the AOJ's decision as supplemental claim, higher level review, or appeal to the Board.[160] The notice said that "[t]he enclosed VA Form 20-0998, Your Rights To Seek Further Review Of Our Decision, explains your options in greater detail and provides instructions on how to request further review," including referral to a VA webpage "to learn more about how the disagreement process works."[161] VA's webpage posed the question, "What can I do if I disagree with VA's Supplemental Claim decision?"[162] VA answered: "You can request a Board Appeal if you want a Veterans Law Judge to review your case."[163] The VA Form 20-0998 said the veteran could appeal to the Board from a supplemental claim decision and could request a hearing and/or the opportunity to submit additional evidence but warned that "[t]he Board does not have a duty to assist you in obtaining additional evidence."[164] As instructed by the NOD form (VA Form 10182), the veteran listed the specific issues he appealed, including "[e]ntitlement to service connection for a left eye condition."[165] For the evidence submission option the veteran chose, VA's webpage says, "a Veterans Law Judge will consider new evidence *together with evidence that was already part of your case when we made our most recent decision on your claim*" (emphasis

---

[158] *Id.* at 175.

[159] *Id*. at 150.

[160] R. at 761.

[161]*Id.*

[162] *Supplemental Claims*, https://www.va.gov/decision-reviews/supplemental-claim/#what-happens-after-i-file-a-su (last visited May 6, 2025).

[163] *Id.*

[164] R. at 769.

[165] R. at 110.

29

added), with the Board's goal being to send a decision "within 550 days."[166] As VA's contrary assurances make clear, there was nothing in the winding road of notice VA provided that even hinted that the Board would not review the veteran's whole case and would not consider the evidence that was already part of his case—or that the Board would only address whether the veteran had submitted new and relevant evidence. In "a nonadversarial system built on notice and the opportunity to be heard" and "governed by the due process clause of the Constitution," such inadequate and misleading notice is unacceptable.[167]

It makes good sense to require new and relevant evidence for the AOJ to readjudicate a claim, especially when the adjudication of the underlying claim occurred within the past year. But there is no logic to limiting the Board's authority when it considers a case for the first time, especially when that limit contravenes the Board's statutory mandate to make VA's final decisions on appeals based on the entire record and all the evidence.[168] And it cannot be that a veteran who files a supplemental claim to work with the AOJ to develop the claim in hopes of resolving it before seeking Board review forfeits the right to Board consideration of all the evidence—especially with no notice of so harsh a consequence. What about VA's suggestion that "whenever the claimant is uncertain [whether a given piece of evidence was considered], the claimant can submit the evidence in question again as part of a supplemental claim"?[169] If the evidence indeed was already considered in the AOJ's denial of the claim, the veteran would lose the right to Board review of the merits of that denial by taking VA's advice! This is the trap for the unwary that the VA disability compensation system is not meant to be.[170]

The Court's holding that a veteran's appeal of the AOJ's denial of a supplemental claim forecloses Board review of the merits of the veteran's claim unless the Board determines that the veteran has submitted evidence the Board deems new and relevant seems likely to be the death

---

[166] *Board Appeals*, https://www.va.gov/decision-reviews/board-appeal/ (last visited May 6, 2025).

[167] *Wiker v. McDonough*, 36 Vet.App. 119, 126 (2023); *see*, *e.g.*, *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) ("[E]ven in situations where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system.") (quoting *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993).

[168] *See* 38 U.S.C. § 7104(a).

[169] VA Claims and Appeals Modernization, 84 Fed. Reg. at 139-40.

[170] *See Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009); *Percy v. Shinseki*, 23 Vet.App. 37, 47 (2009). A veteran's procedural rights "may not be curtailed absent a voluntary, knowing, and intentional waiver," which cannot be assumed or obtained by misinformation. *Clark v. O'Rourke*, 30 Vet.App. 92, 98 (2018).

knell for supplemental claims following AOJ decisions. And the majority's endorsement of the Secretary's common contention that there is no prejudice to the veteran because he can always file another supplemental claim[171] fails to appreciate the realities of VA's system. The veteran will never get the Board to review the merits of his claim, notwithstanding his timely efforts, if he cannot gather more or better evidence that the Board deems new and relevant or draw a Board member that does not make the mistakes evident here—the apparent inattention to both the additional evidence considered by the AOJ in adjudicating the supplemental claim and the AOJ's unduly miserly test for relevance.

Though I have previously noted the ubiquity of the supplemental claim "as the AMA's flexible sealant—available to fix any leak or other problem,"[172] my colleagues declared, just 16 days later, that "the availability of supplemental claims is not the panacea for all Board procedural errors that the Secretary suggests."[173] This case leaves the supplemental claim seeking AOJ readjudication as a search too likely to be churning in a forest of no return.[174] I respectfully dissent.

---

[171] *Ante* at 6, 8.

[172] *Jackson*, 37 Vet.App. at 302(Jaquith, J., dissenting).

[173] *Bolds v. McDonough*, 37 Vet.App. 359, 370 (2024).

[174] *See Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1118-19 (Fed. Cir. 2021) (describing appeals churning in the system and noting the AMA's aim at reform); *The Forest of No Return*, BABES IN TOYLAND (Disney 1961), *supra* n.117.

31